**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIMOTHY KUNZ,<br><br>Plaintiff,<br><br>vs.<br><br>ZYMERGEN INC., JAY FLATLEY, SANDI PETERSON, STEVEN CHU, ZACH SERBER, TRAVIS MURDOCH, MATT OCKO, ROHIT SHARMA, and CHRISTINE GORJANC,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, Timothy Kunz ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1. Plaintiff brings this stockholder action against Zymergen Inc. ("Zymergen" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants", collectively with the Company, the "Defendants") for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to Ginkgo Bioworks Holdings, Inc, ("Parent"), via merger vehicle Pepper Merger Subsidiary Inc. ("Merger Sub" and collectively with Parent, "Ginkgo"), as a result of an unfair

- 1 -
COMPLAINT

process, and to enjoin an upcoming vote on a proposed all stock transaction (the "Proposed Transaction").

2. The terms of the Proposed Transaction were memorialized in a July 24, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, Zymergen will become an indirect wholly-owned subsidiary of Ginkgo. Zymergen public stockholders will receive, in exchange for each share of Zymergen stock, 0.9179 shares of Ginkgo Common Stock.

3. Thereafter, on September 2, 2022, Ginkgo filed a Registration Statement on Form S4 attaching the proxy statement (the "Registration Statement") with the SEC in support of the Proposed Transaction.

4. The Proposed Transaction is unfair for a number of reasons. Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5. In violation of the Exchange Act, Defendants caused to be filed the materially deficient Registration Statement in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Registration Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act. As detailed below, the Registration Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Zymergen and Gingko, provided by Zymergen and Gingko management to the Board and the Board's financial advisor Cowen and Company, LLC ("Cowen")

and (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinions created by Cowen, if any, and provide to the Company and the Board.

6. Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff. This action seeks to enjoin the Proposed Transaction.

**PARTIES**

7. Plaintiff is a citizen of New York and, at all times relevant hereto, has been a Zymergen stockholder.

8. Defendant Zymergen design, develop, and commercialize microbes, molecules, and materials. Zymergen is incorporated under the laws of the State of Delaware and has its principal place of business at 5980 Horton Street, Suite 105, Emeryville CA 94608. Shares of Zymergen common stock are traded on the Nasdaq under the symbol "ZY".

9. Defendant Jay Flatley ("Flatley") has been a Director of the Company at all relevant times. In addition, Flatley serves as the Chairman of the Board of Directors.

10. Defendant Sandi Peterson ("Peterson") has been a Director of the Company at all relevant times.

11. Defendant Steven Chu ("Chu") has been a director of the Company at all relevant times.

12. Defendant Travis Murdoch ("Murdoch") has been a director of the Company at all relevant times.

13. Defendant Zach Serber ("Serber") has been a director of the Company at all relevant times.

14. Defendant Matt Ocko ("Ocko") has been a director of the Company at all relevant times.

15. Defendant Rohit Sharma ("Sharma") has been a director of the Company at all relevant times.

16. Defendant Christine Gorjanc ("Gorjanc") has been a director of the Company at all relevant times.

17. Defendants identified in ¶¶ 9 - 16 are collectively referred to as the "Individual Defendants."

18. Non-party Parent together with its subsidiaries, develops platforms for cell programming. Shares of Parent common stock are traded on the Nasdaq Stock Exchange under the symbol "DNA".

19. Non-party Merger Sub is a wholly owned subsidiary of Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

20. This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act. This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have. The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

21. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

22. Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Zymergen maintains its principal offices in this district, and each of the Individual Defendants, as Company officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

23. Zymergen designs, develops, and commercializes microbes, molecules, and materials. It offers an automation solution comprising reconfigurable automation carts, a modular hardware building blocks that allow for assembly of work cells customized for the particular needs of a lab; and automation control software, a cloud-based software used to control integrated

automation systems. It serves electronics, packaging, healthcare, agriculture, and other industries. Zymergen Inc. was incorporated in 2013 and is based in Emeryville, California.

24. The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance. For example, in the May 12, 2022 Earnings Call announcing its 2022 Q1 financial results, the Company highlighted such milestones as total revenue of $4.8 million as well as cash and cash equivalents of $337 million as of March 31, 2022.

25. Speaking on these positive results, CEO Defendant Peterson commented on the Company's positive results as follows, "'Our mission at Zymergen is to partner with nature to make better products, a better way, for a better world. One of the key transformations we have made is to create a nimble, disciplined product development process," …... "We now have the infrastructure to support great execution and the delivery of products across our three businesses of Advanced Materials, Drug Discovery and Automation."

26. These results are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Zymergen. Clearly, based upon these positive results and outlook, the Company is likely to have tremendous future success.

27. Despite this upward trajectory, the Individual Defendants have caused Zymergen to enter into the Proposed Transaction without providing requisite information to Zymergen stockholders such as Plaintiff.

*The Flawed Sales Process*

28. As detailed in the Registration Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

29. Notably, the Registration Statement discloses that a "strategic oversight committee" was formed to oversee the Proposed Transaction, but fails to disclose what powers they had in reviewing a potential transaction, including whether they were empowered to veto a

1  transaction that was not in the best interest of shareholders. Furthermore, the Registration
2  Statement fails to indicate why Defendant Flatley, the Company CEO and therefore non-
3  independent, was included on the strategic oversight committee.

4      30. The Registration Statement also fails to provide adequate information regarding the
5  role of advisor Boston Consulting Group, including what specific role it played in the sales process,
6  and what consideration was paid or is owed to the advisor by the Company for services rendered
7  relating to the sales process.

8      31. Moreover, despite negotiating a stock for stock transaction, the Board failed to
9  ensure a collar mechanism was included in the merger agreement to prevent a precipitous fall in
10 the stock price.

11     32. Additionally, the Registration Statement is silent as to the nature of the
12 confidentiality agreement entered into between the Company and Ginkgo, whether this agreement
13 differed from any other agreement with potentially interested third parties not specifically
14 mentioned by the Registration Statement, if so in all specific manners, including all specific terms
15 of any such included "don't-ask, don't-waive" provisions or standstill provisions contained
16 therein, including, all specific conditions, if any, under which such provisions would fall away.

17     33. It is not surprising, given this background to the overall sales process, that it was
18 conducted in an inappropriate and misleading manner.

19 *The Proposed Transaction*

20     34. On July 25, 2022, Zymergen and Ginkgo issued a joint press release announcing
21 the Proposed Transaction. The press release stated, in relevant part:

> **BOSTON and EMERYVILLE, Calif., July 25, 2022 /PRNewswire/ --** Today, Ginkgo Bioworks (NYSE: DNA) — the leading horizontal platform for cell programming — and the biotechnology company Zymergen (Nasdaq: ZY) announced they have entered into a definitive agreement under which Ginkgo will acquire Zymergen in an all-stock transaction that values Zymergen at an approximately $300 million market capitalization. Under the terms of the agreement, which have been unanimously approved by the boards of directors of both companies, Zymergen stockholders will receive a fixed exchange ratio of 0.9179 Ginkgo shares for each Zymergen share, representing 5.25% pro forma ownership of Ginkgo following the transaction.

This transaction brings together two highly complementary organizations that share the vision that biology can transform a wide range of industries including manufacturing, agriculture, and medicine. Ginkgo plans to integrate Zymergen's core automation and software technologies for scaling strain engineering capacity into its Foundry, including Zymergen's machine learning and data science tools for exploring known and unknown genetic design space. Ginkgo customers will also benefit from the expansion of Ginkgo's library of biological assets ("Codebase") following the transaction.

The agreement announced today represents Ginkgo's largest acquisition to date and is expected to significantly enhance Ginkgo's platform by integrating strong automation and software capabilities as well as a wealth of experience across diverse biological engineering approaches. Ginkgo is a horizontal platform, serving customers across industries rather than producing its own products, and will support Zymergen's plans to evaluate strategic alternatives for their Advanced Materials and Drug Discovery businesses, which have established valuable product pipelines and rapid prototyping capabilities. Additionally, Zymergen will continue its standalone cost restructuring initiatives, including headcount reductions and program rationalization. Finally, the addition of Zymergen personnel is expected to help fill planned hiring by Ginkgo as it scales the platform. Taken together, Ginkgo expects these actions to minimize incremental run-rate operating expenses in connection with the combination once integration is completed.

"We have always had incredible respect for the Zymergen team and the strength of the technologies that they have built for cell programming," said Jason Kelly, CEO and co-founder of Ginkgo Bioworks. "We are thrilled to integrate Zymergen's capabilities into our Foundry, which we expect to accelerate the growth of our platform as we continue to deliver on our mission to make biology easier to engineer for our customers, helping us drive down the costs of cell programming as we invest in scale. We can't wait to welcome Zymergen's technical teams, who will support our scaling objectives."

"At Zymergen, our team has built a world class and innovative technology platform which will complement Ginkgo's cell programming capabilities," said Jay Flatley, Chairman and Acting CEO of Zymergen. "We're excited about the opportunities created by combining our technologies to accelerate Ginkgo's platform development to better serve customers, promote Zymergen's public benefit purpose, and achieve our shared vision of sustainability and a world built on biology. The transaction also represents a compelling opportunity for our stockholders to participate in the future growth and upside potential of the combined company."

*Potential Conflicts of Interest*

35.     The breakdown of the benefits of the deal indicate that Zymergen insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Zymergen.

36.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. Notably, while the Registration Statement provides the following information, it fails to account for the amount of merger consideration which such shares will be exchanged for:

| Name and Address of Beneficial Owner | Shares Beneficially Owned Number | Percent |
|---|---|---|
| **Named Executive Officers and Directors** | | |
| Enakshi Singh | 426,010 | * |
| Steven Chu | 165,666 | * |
| Jay Flatley | 1,050,574 | 1.0% |
| Christine M. Gorjanc | 13,527 | * |
| Travis Murdoch | 29,697 | * |
| Matthew A. Ocko | 7,366,635 | 7.1% |
| Sandra E. Peterson | 163,566 | * |
| Zach Serber | 2,654,265 | 2.5% |
| Rohit Sharma | — | —% |
| Josh Hoffman | 2,639,170 | 2.5% |
| Jed Dean | 1,000 | * |
| **Current Executive Officers and Directors as a group (10 persons)** | 12,234,606 | 11.7% |
| **Other 5% Stockholders** | | |
| Entities affiliated with Data Collective II, L.P. | 7,366,635 | 7.1% |
| Entities affiliated with SVF Excalibur (Cayman) Limited | 26,614,219 | 25.5% |
| Entities affiliated with True Ventures IV, L.P. | 7,278,206 | 7.0% |

37.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company. The Registration Statement fails to give a complete

accounting of these awards, specifically related to options, but provides the following restricted stock unit amounts as follows:

| Name | Number of Shares (#) | Value ($) |
|---|---|---|
| Enakshi Singh | 293,653 | 710,640 |
| Steven Chu | 50,000 | 121,000 |
| Jay Flatley | — | — |
| Christine M. Gorjanc | 50,000 | 121,000 |
| Mina Kim | 277,833 | 672,356 |
| Travis Murdoch | 50,000 | 121,000 |
| Matthew A. Ocko | — | — |
| Sandra E. Peterson | 50,000 | 121,000 |
| Zach Serber | 173,333 | 419,466 |
| Rohit Sharma | — | — |

38. In addition, certain employment agreements with certain Zymergen executives, entitle such executives to severance packages should their employment be terminated under certain circumstances. These 'golden parachute' packages are significant, and will grant several directors or officers entitled to them millions of dollars, compensation not shared by Plaintiff and will be paid out as follows:

| Named Executive Officer[1] | Cash ($)[2] | Equity ($)[3] | Perquisites / Benefits ($)[4] | Total ($) |
|---|---|---|---|---|
| Jay Flatley | — | — | — | — |
| Enakshi Singh | 771,404 | 710,640 | 31,333 | 1,379,473 |
| Zach Serber | 771,404 | 419,466 | 31,333 | 1,088,299 |
| Josh Hoffman | — | — | — | — |
| Jed Dean | — | — | — | — |

39. The Registration Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

40. Thus, while the Proposed Transaction is not in the best interests of Zymergen, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Registration Statement*

41. On September 2, 2022, the Zymergen Board caused to be filed with the SEC a materially misleading and incomplete Registration Statement that, in violation the Exchange Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

*Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction*

42. Specifically, the Registration Statement fails to disclose material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction. In particular, the Registration Statement fails to disclose:

a. Adequate disclosure as to the powers the strategic oversight committee had in evaluating the Proposed Transaction, including whether they had the power to veto a transaction not in the best interest of common shareholders;

b. Adequate disclosure of Boston Consulting Group's role in the sales process and the amount of any money paid or owed to it by the Company for such services;

c. Adequate disclosure as to why no collar mechanism was included in the merger agreement;

d. Whether the confidentiality agreements entered into by the Company with Ginkgo differed from any other unnamed confidentiality agreement entered into between the Company and an interested third parties;

e. All specific conditions under which any standstill provision contained in any entered confidentiality agreement entered into between the Company and

      potentially interested third parties throughout the sales process, including Ginkgo, would fall away; and

    f. Adequate and complete disclosure of communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

*Omissions and/or Material Misrepresentations Concerning Zymergen's and Ginkgo's Financial Projections*

43. The Registration Statement fails to provide material information concerning financial projections for Zymergen provided by Zymergen management to the Board and Cowen and relied upon by Cowen in its analyses. The Registration Statement discloses management-prepared financial projections for the Company which are materially misleading.

44. Notably the Registration Statement reveals that as part of its analyses, Cowen reviewed, "certain internal financial analyses, financial forecasts, reports and other information concerning Zymergen prepared by the management of Zymergen."

45. Therefore, the Registration Statement should have, but fails to provide, certain information in the projections that Zymergen management provided to the Board, Cowen, and Cowen. Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors. Investors can come up with their own estimates of discount rates or [] market multiples. What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

46. With regard to the *Zymergen Projections* prepared by Zymergen, the Registration Statement fails to disclose material line items for the following:

    a. General and Administrative Expenses, including the underlying inputs, metrics, and assumptions necessary to calculate this metric, including specifically: stock-based compensation expense and restructuring costs;

    b. EBIT (After Stock-Based Compensation Expense), including the definition utilized as well as any underling inputs, metrics, and assumptions necessary to calculate this metric;

    c. EBITDA (After Stock-Based Compensation Expense), including the definition utilized as well as any underling inputs, metrics, and assumptions necessary to calculate this metric;

    d. The specific inputs and assumptions used to determine the utilized 25% tax provision rate; and

    e. Unlevered Free Cash Flow, including the definition utilized as well as any underling inputs, metrics, and assumptions necessary to calculate this metric.

47. The Registration Statement also fails to disclose a reconciliation of all non-GAAP to GAAP metrics utilized in the projections.

48. The Registration Statement also fails to include any projection information for Ginkgo whatsoever. Such information is necessary as the entirety of the merger consideration is composed of Parent stock, and its value, and therefore the value of the merger consideration, cannot be determined without such information.

49. This information is necessary to provide Plaintiff, in his capacity as a Company stockholder, a complete and accurate picture of the sales process and its fairness. Without this information, Plaintiff is not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

50. Without accurate projection data presented in the Registration Statement, Plaintiff is unable to properly evaluate the Company's true worth, Ginkgo's true worth (and thus the true worth of the merger consideration), the accuracy of the Cowen' financial analyses, or make an informed decision whether to vote in favor of the Proposed Transaction. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

*Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Cowen*

51. In the Registration Statement, Cowen describes its fairness opinion and the various valuation analyses performed to render such opinion. However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions. Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

52. With respect to the *Select Public Companies Analysis*, the Registration Statement fails to disclose:

    a. The specific metrics for each selected company analyzed; and

    b. The specific EV/2022E Revenue and EV/2023E Revenue reference ranges utilized and the specific inputs and assumptions used to determine the same.

53. With respect to the *Selected Transactions Analysis*, the Registration Statement fails to disclose:

    a. The specific metrics for each selected transaction;

    b. The date on which each selected transaction closed;

    c. The value of each selected transaction; and

    d. The specific inputs and assumptions used to determine the utilized Q2 2022E LTM Revenue multiple range of 2.00x to 6.25x.

54. With respect to the *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose:

    a. The terminal value for Zymergen calculated;

    b. The specific inputs and assumptions used to determine the utilized perpetuity growth rate range of 3% to 5%;

    c. The specific inputs and assumptions used to determine the utilized discount rate range of 18.7% to 20.75%;

    d. Zymergen's weighted average cost of capital utilized;

    e.    The specific assumptions utilized regarding after-tax cost of debt, market risk premium, equity size premium, risk free rate, beta and debt to total capitalization, and their specific inputs and assumptions;

    f.    The specific number of Zymergen's fully diluted shares outstanding as of July 15, 2022 utilized;

    g.    Zymergen's estimated federal net operating loss carryforwards calculated;

    h.    The specific inputs and assumptions used to determine the utilized discount rate of 19.75% as applied to the Company's NOLs; and

    i.    The specific inputs and assumptions used to determine the utilized cost of equity for Zymergen of 19.81%.

55. With respect to the *Present Value of Analyst Price Targets* analysis, the Registration Statement fails to disclose:

    a.    The specific price targets utilized;

    b.    The identity of the analyst firms that created the utilized price targets; and

    c.    The specific inputs and assumptions used to determine the applied discount rate of 19.81%.

56. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

57. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Zymergen stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Registration Statement.

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

58. Plaintiff repeats all previous allegations as if set forth in full herein.

59. Defendants have disseminated the Registration Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

60. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

61. As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

> No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

62. The Registration Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above. Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Registration Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

63. The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

64. The Individual Defendants were at least negligent in filing a Registration Statement that was materially misleading and/or omitted material facts necessary to make the Registration Statement not misleading.

65. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the vote regarding the Proposed Transaction.

## SECOND COUNT

### Violations of Section 20(a) of the Exchange Act

### (Against all Individual Defendants)

66. Plaintiff repeats all previous allegations as if set forth in full herein.

67. The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith. Because of their possession of such information, the Individual Defendants knew or should have known that the Registration Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

68. The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Registration Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The

Individual Defendants were able to, and did, control the contents of the Registration Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Registration Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

69. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Zymergen's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Registration Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Registration Statement and are therefore responsible and liable for the misrepresentations contained herein.

70. The Individual Defendants acted as controlling persons of Zymergen within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Zymergen to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Zymergen and all of its employees. As alleged above, Zymergen is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants, as follows:

A. Enjoining the Proposed Transaction;

B. In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained

therein not misleading;

D.  Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E.  Granting such other and further relief as this Court may deem just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: September 8, 2022

**BRODSKY & SMITH**

By: _____
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Blvd., Ste. 900
Phone: (877) 534-2590
Facsimile (310) 247-0160

*Attorneys for Plaintiff*

COMPLAINT